John Day Jackson v. Commissioner.
Jackson v. Commissioner
Docket No. 107990.
United States Tax Court
1944 Tax Ct. Memo LEXIS 385; 3 T.C.M. (CCH) 80; T.C.M. (RIA) 44024; January 28, 1944
*385 Curtiss K. Thompson, Esq., 205 Church St., New Haven, Conn., for the petitioner. M. L. Sears, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding is to test the correctness of respondent's determination of a deficiency in income tax for the year 1934 in the sum of $10,090.45. The deficiency arises from the disallowance of a claimed deduction for loss on account of stock which petitioner alleges became worthless in that year. The basis of respondent's determination is that the stock claimed to be worthless was acquired as a part of an inseparable unit and it is now impracticable to arrive at a proper allocation of cost as between the parts of the unit. All of the facts are stipulated and as stipulated are found. Only so much as is necessary to an understanding of the issue is set forth here. Findings of Fact The petitioner John Day Jackson is an individual residing in New Haven, Connecticut. At various times between February 1926 and July 1929 he had purchased a total of 55 shares of the capital stock of the Central Trust Company of Illinois (hereinafter called Central Bank) a corporation of the State of Illinois engaged in the business of *386 a bank and trust company in Chicago. Each of these shares carried with it a beneficial interest in one share of the capital stock of the Central Illinois Company (hereinafter called Central Affiliate) an investment affiliate of the Central Bank. Central Affiliate was organized to carry out a policy of investment deemed advisable by the directors of the bank but unavailable to the bank by reason of law. The stock of the Central Affiliate was held by a group of trustees composed of directors of the Central Bank for the benefit of the stockholders of the bank and was evidenced by an indorsement on the stock of the bank. It was inseparable from the stock of the bank and not transferable by itself. The total cost to petitioner of his investment was $17,573.50. It is stipulated that it is impracticable to apportion such cost between shares of stock of the Central Bank and the beneficial interest in the shares of stock of the Central Affiliate as of the time of purchase. On July 25, 1931 a consolidation was effected between the Central Bank and another Chicago bank out of which emerged the Central Republic Bank and Trust Company (hereinafter called the Consolidated Bank) and an investment *387 affiliate, the Central Republic Company (hereinafter called Consolidated Affiliate). The consolidation agreement proposed that the interested banks transfer to the contemplated consolidated bank assets worth $28,000,000, contributed in proportion of $16,000,000 by the Central Bank and $12,000,000 by the other bank involved. The new affiliate was given assets of $5,000,000, contributed in the ratio of $2,857,150 by the Central Affiliate and $2,142,850 by the affiliate of the other interested bank. Except for certain physical assets taken at book value, and certain securities taken at a value equal to their principal amount, the transferred assets were to be evaluated by a committee composed of three representatives of the Central Bank and three representatives of the other interested bank with a seventh member as arbitrator. The two affiliates, Central Affiliate and the investment affiliate of the other consolidating bank, agreed to guarantee and indemnify the consolidated bank against loss on account of the transferred assets. On July 25, 1931 the Auditor of Public Accounts of the State of Illinois issued a certificate to the effect that evidence furnished him as required by law *388 showed that the capital stock of the Consolidated Bank amounting to $14,000,000, the surplus amounting to $10,000,000, and the reserve amounting to $4,000,000 had been fully paid in, wherefore, he authorized the corporation to commence business. On the same date the corporation did commence business with outstanding stock of 140,000 shares. The Consolidated Affiliate commenced business the same date, with assets of $5,000,000, and outstanding stock of 140,000 shares. This stock was transferred to trustees in accordance with the terms of the consolidation agreement, to be held for the beneficial owners, the stockholders of the bank. As in the case of the old trust agreement, these shares were not severable from, or transferable apart from the shares of the Consolidated Bank, and were evidenced by an indorsement on the stock certificate of the latter. On the same date the trust agreement, dated February 21, 1921, under which the stock of the Central Affiliate was held in trust, was terminated in accordance with its provisions and the stock so held was distributed to the beneficial owners thereof. Thereupon the stock became transferable independently and it has since so remained. As *389 a result of these transactions the petitioner thus became entitled to 55 shares of stock of the Central Affiliate and 36 2/3 shares of stock in the new bank with a corresponding interest attached in the Consolidated Affiliate. On July 27th he purchased in the open market 1/3 of a share of the Consolidated Bank with the appurtenant beneficial interest at a cost of $80.67, thus rounding out his investment to a full 37 shares. On or about this date he surrendered his old certificate and received the various shares to which he was entitled. He has continued to hold these shares until the present time. The value of the Central Affiliate shares is stipulated to have been less than the book value, $51.10, on July 25, 1931. The first trading in stock of the Consolidated Bank, with the beneficial interest in the stock of the Consolidated Affiliate under the trust agreement, was on August 5, 1931, when it was quoted at $239 bid and $242 asked. On or about December 9, 1933 the trust agreement of July 25, 1931 under which the stock of the Consolidated Affiliate was held in trust was terminated. By reason thereof on December 20, 1933 the capital stock of the affiliate became distributable to *390 the stockholders of the bank on a share-for-share basis. Thereafter the stock of the Consolidated Affiliate and of the Consolidated Bank was transferable and disposable independently of and without reference to each other. The petitioner then had 55 shares in the Central Affiliate, 37 shares in the Consolidated Bank and 37 shares in the Consolidated Affiliate. In November 1934 the Auditor of Public Accounts for the State of Illinois closed the Consolidated Bank for an examination and adjustment and during the same month he appointed a receiver for the bank and filed a bill for its dissolution. During that year the 37 shares of stock owned by the petitioner in the Consolidated Bank became worthless. As of July 25, 1931 the value of the stock in the Central Affiliate was $51.10 per share; the value of the stock of Consolidated Bank was $200 per share; and the value of the stock of Consolidated Affiliate was $35.71 per share. An apportionment of the petitioner's cost of $17,573.50 among the three securities as of July 25, 1931 is practicable. It may be made by allocating the cost among the three securities in the ratio which the total value of the petitioner's shares of each corporation *391 bears to the aggregate value of the petitioner's shares of all three corporations. Opinion ARUNDELL, Judge: There is no fundamental issue of law present in this case. The parties are in agreement that it is altogether desirable to apportion petitioner's cost among the several interests he later acquired, but the respondent says there exists no practical basis on which to make the allocation. We have had before us a number of cases where the underlying facts were very similar to those here present. In , affirmed , the conclusion was reached that the cost could be apportioned between the bank shares and those of its security affiliate. In that case the two interests had been severed, and the security stock having been disposed of at less than its cost as apportioned a loss deduction was allowed. In , affirmed , where the facts were somewhat different, the apportionment was denied, and in , we again thought *392 that the evidence was not sufficient to make an allocation of cost between the bank shares and those of its affiliate. Article 1567 of Regulations 62, promulgated under the 1921 Act, had suggested the need of an apportionment of cost under very similar circumstances and even though that article as such does not appear in the later Regulations, the principle announced at that early date has long since become embedded in the decisions. . By the transaction of July 25, 1931, petitioner received for his original interest in the Central Trust Company of Illinois, shares in the Central Affiliate and shares in the Consolidated Bank, which latter shares carried with them an interest in the Consolidated Affiliate. The interest so acquired was entirely different property from that which petitioner had originally purchased and, as suggested in Article 1567, supra, an allocation of cost should be made for the purpose of determining any subsequent gain or loss upon the disposition of the newly acquired property. Our findings make clear that we think an apportionment is practicable. The values determined may be accepted as the sound *393 or market values of the several securities. Where persons with divergent interests, dealing at arms' length, bring together their property at agreed values, giving each a share according to the interest contributed, the value so arrived at cannot be regarded as arbitrary or capricious and this is particularly true where, as was present here, the actual bid and asked price on the open market of these same interests was at figures substantially equivalent to those agreed upon by the parties, in fixing the values for the purpose of the reorganization of July 25, 1931. On the basis of these values a fair and reasonable apportionment can be made. This is all that may be demanded. . The interest in the Central Affiliate has been fixed at $51.10 per share, which was its book value on July 25, 1931. As respondent concedes that the actual value of these shares was less than that figure and petitioner is agreeable to our using the book value although it is against his interest to use such a high figure, we have accepted this value to determine the question in issue. This would place the total value of the shares *394 in the old Central Affiliate at $2,810.50, as of July 25, 1931. We have determined that the value of the Consolidated Bank shares at the time of their acquisition was $200 per share, or approximately $7,333.32, and that the value of the shares of Consolidated Affiliate was $35.71 per share, or approximately $1,309.36. The aggregate value of the shares of the three corporations received in the exchange of July 25, 1931, was thus approximately $11,453.18. The ratio which the value of the shares of each corporation bears to this aggregate value is the ratio in which the original cost basis will be allocated to each. In other words, by dividing the aggregate value by the value of the interest in each corporation will be found a percentage, which when applied to. petitioner's original cost of $17,573.50, will yield the proportionate cost to be assigned to each interest. The fractional share of Consolidated Bank stock acquired in 1931 to round out the petitioner's holdings should be apportioned in the ratio which the value of the Consolidated Bank stock bears to the value of the unit. We think there is no merit in petitioner's alternative contention that the severance of the shares of *395 Consolidated Bank and its affiliate constituted a distribution under section 115 (d) of the Revenue Act of 1934. The loss suffered by petitioner in 1934 by reason of his shares of stock in the Consolidated Bank becoming worthless should be allowed based on a cost determined in the manner herein set forth. Decision will be entered under Rule 50.